1
2
3
4
5                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
6                                  AT TACOMA

7
    BRETT HAMILTON,
8                                              CASE NO. C15-5587 BHS
                        Plaintiff,
9                                              ORDER GRANTING KITSAP
          v.                                   COUNTY'S MOTION FOR
                                               SUMMARY JUDGMENT AND
10  KITSAP COUNTY,                             DENYING SANCTIONS
11
                        Defendant.
12

13         This matter comes before the Court on Kitsap County's ("County") motion for

14  summary judgment (Dkt. 36), motion to strike (Dkt. 43), and motion for sanctions (Dkt.

15  47). The Court has considered the pleadings filed in support of and in opposition to the

16  motions and the remainder of the file and hereby (1) grants the motion for summary

17  judgment; (2) denies the motion for sanctions; and (3) denies the motion to strike.

18                           **I. PROCEDURAL HISTORY**

19         On July 17, 2015, Plaintiff Brett Hamilton ("Hamilton") filed a 42 U.S.C. § 1983

20  suit against the County in Kitsap County Superior Court. Dkt. 1-1. On August 19, 2015,

21  the County removed the suit to this Court. Dkt. 1.

22

1    On November 5, 2015, the County moved to dismiss. Dkt. 8. On January 5, 2016,

2 the Court granted the motion in part and denied it in part and granted Hamilton leave to

3 amend his complaint. Dkt. 14.

4    On January 21, 2016, Hamilton filed an amended complaint asserting a claim for

5 violation of his due process rights and a claim for breach of contract. Dkt. 15.

6    On February 4, 2016, the County filed a second motion to dismiss Hamilton's due

7 process claim. Dkt. 16. On February 22, 2016, Hamilton responded. Dkt. 17. On

8 February 26, 2016, the County replied. Dkt. 18. On March 22, 2016, the Court granted

9 the County's motion, dismissing Hamilton's procedural due process claim and again

10 granting Hamilton leave to amend his substantive due process claim. Dkt 19.

11    On March 30, 2016, Hamilton filed a second amended complaint. Dkt. 20

12 ("Comp."). On April 14, 2016, the County answered. Dkt. 21.

13    On August 4, 2016, the County moved for summary judgment on Hamilton's

14 remaining claims. Dkt. 36. On August 22, 2016, Hamilton responded. Dkt. 41. On

15 August 26, 2016, the County replied and requested that the Court strike materials

16 submitted in support of Hamilton's response. Dkt. 43. Simultaneous with its reply, the

17 County also moved for sanctions pursuant to Federal Rule of Civil Procedure 11. Dkt. 47.

18                      **II. FACTUAL BACKGROUND**

19    Hamilton began working as a Corrections Officer for the Kitsap County Sheriff

20 Office's Corrections Division in October 2002. Dkt. 41-2 at 1. During his employment

21 with Kitsap County, Hamilton also worked as a Reserve Police Officer for the Bremerton

22

1  Police Department. Dkt. 41-2 at 2–3. He also received high praise from his supervisors as

2  "a very valuable asset to the division and the department." Dkt. 41-3 at 66.

3  **A.    Text Messages**

4          In January 2012, Hamilton began investigating thefts by inmates inside the Kitsap

5  County Jail. Dkt. 41-2 at 2. The thefts involved the exploitation of a programming

6  mistake in the Jail's inmate video-communication system, whereby inmates could avoid

7  the fees associated with using the service. Dkt. 38 at 8; Dkt. 41-2 at 2. In April of 2012,

8  several corrections officers, including Hamilton, investigated and submitted reports on

9  the matter. Dkt. 41-2 at 2; Dkt 41-3 at 51–56. Reviewing the reports, the Department

10  determined that the problem would need to be fixed by the company providing the

11  service. Dkt. 37-1 at 8. Hamilton was informed the problem was being addressed. *Id.*

12         Hamilton decided to continue investigating the video-communication system by

13  watching the video calls between one particular inmate, suspected of abusing the system,

14  and the inmate's wife. *Id.* at 7–9. Approximately one month after submitting his report,

15  Hamilton expanded the scope of his investigation by using a personal disposable cell

16  phone to initiate a series of text messages with the inmate's wife. Dkt. 41-2 at 2–3. The

17  series of text messages included the following:

18         **May 28, 2012:**     **"I love you hon."**

19         **June 6, 2012:**      **"I love u so much ash plss call me babe."**

20         June 7, 2012:      "This is Ashley. Who is this?"

21         **June 10, 2012:**     **"Never forget how much I love u ash everything will be ok**

22                                **I will keep u safe im here for u even in death see u soon."**

| | | |
|---|---|---|
| 1 | June 10, 2012: | "Who is this?" |
| 2 | June 10, 2012: | "Hey you have been texting my daughter Ashley don't know |
| 3 | | who you are but I will find out come clean or stop calling." |
| 4 | **June 10, 2012:** | **"I'm sorry Ash I leave you alone now no worry I wish all** |
| 5 | | **good for you always."** |
| 6 | June 10, 2012: | "I just wanna know who this is." |
| 7 | June 10, 2012: | "I'm giving you a fair warning. This is Ashley. You have 15 |
| 8 | | minutes to let me know who this is. If I don't receive a |
| 9 | | response this will be reported." |

10 Dkt. 38-1 at 30.

11       Hamilton sent his first message of June 10, 2012 because the inmate had requested

12 bereavement leave to attend the funeral of his mother-in-law. Dkt. 41-2 at 3. Hamilton

13 was investigating whether the mother-in-law had indeed died. *Id.* The mother of the

14 inmate's wife had died the day before Hamilton sent the message. Dkt. 37-1 at 15; Dkt.

15 38-1 at 25. The inmate's wife reported the text messages to the Mason County Sheriff's

16 Office. Dkt. 41-3 at 95.

17       Hamilton's supervisors were unaware that Hamilton was contacting the inmate's

18 wife, or that he was actively continuing an investigation into the thefts. Dkt. 37-1 at 19,

19 28, 36–37. Hamilton did not prepare any documentation related to the findings or tactics

20 of his continued investigation. Dkt. 38 at 4.

21

22

**B.      Criminal and Administrative Investigations**

In the evening of June 10, 2012, Hamilton's supervisors received information suggesting that Hamilton had been sending potentially harassing text messages to an inmate's wife. Dkt. 41-3 at 78–85. On June 12, 2012, after reviewing memoranda from the officers reporting Hamilton's conduct, the Chief of Corrections directed that Hamilton's conduct be referred to law enforcement for a potential criminal investigation. *Id.*; Dkt. 38 at 4.

At noon on June 16, 2012, a Port Orchard Police Detective contacted Hamilton at his residence. Dkt 41-2 at 4; Dkt. 41-3 at 97–101. The detective showed Hamilton his badge and asked that Hamilton speak with him. Dkt. 40 at 18. They spoke while sitting in the detective's agency-issued vehicle and the detective informed Hamilton that the interview would be recorded. Dkt. 41-3 at 97–101. The detective asked Hamilton about his messages to the inmate's wife. *Id.* Hamilton repeatedly denied that he sent the messages, that he knew the identity of the inmate's wife, or that he had discussed sending the messages with coworkers. *Id.* After the interview, the detective left his business card with Hamilton. Dkt. 41-2 at 5.

On June 18, 2012, Hamilton's sergeant informed him that a criminal investigation had been initiated for potential telephone harassment. Dkt. 41-2 at 5. The sergeant sent Hamilton home for the day with orders to report the following morning to commence a period of administrative assignment. *Id.* On June 19, 2012, Hamilton received formal written notice that the Sheriff's Office was placing him on immediate administrative assignment and initiating an administrative investigation. Dkt. 41-3 at 75.

1    The Corrections Chief also directed that a corrections lieutenant inform the

2    Bremerton Police Department that Hamilton was under administrative investigation. Dkt.

3    41-3 at 18. Upon receiving this information, the Bremerton Police Department told

4    Hamilton that he could not volunteer pending the outcome of the investigation. Dkt. 41-2

5    at 8.

6    On June 19, 2012, at the advice of his Guild Representative, Hamilton re-

7    contacted the detective. Dkt. 41-2 at 5–6; Dkt. 41-31 at 87–90, 101–102. Hamilton

8    provided the detective with a signed written statement, admitting the conduct and

9    interactions that he had formerly denied. Dkt. 41-2 at 5–6; Dkt. 41-31 at 101–102.

10   **C.    Restraining Order and Pre-Trial Diversion Agreement**

11   In July 2012, Hamilton was served with a protection order, which prohibited

12   Hamilton from having any contact with the inmate's wife. Comp. at ¶ 4.19. During a

13   subsequent hearing, a judge imposed the protection order for one year. Dkt 37-1 at 32–

14   33; Comp. at ¶ 4.20.

15   In August 2012, Hamilton learned that the Kitsap County Prosecutor had filed

16   criminal charges against him. Comp. at ¶ 4.21. *See also* Dkt. 41-3 at 105–107. In

17   December 2012, Hamilton signed a pre-trial diversion agreement. Dkt. 41-2 at 6.

18   **D.    Disciplinary Proceedings and Termination**

19   On January 18, 2013, the Chief of Corrections sent a letter to Hamilton detailing

20   the results of the administrative investigation and the Chief's preliminary decision to

21   terminate Hamilton's employment. Dkt. 38 at 5. On February 6, 2013 and March 22,

22   2013, Hamilton attended two *Loudermill* hearings, where he was represented by his

1  Guild's attorney. *Id.* at 5–6; Dkt. 38-1 at 54; Dkt. 41-2 at 6–7. On March 26, 2013, Kitsap

2  County terminated Hamilton's employment. Dkt. 41-3 at 109–120.

3       Hamilton was subsequently terminated from his position with the Bremerton

4  Police Department. Dkt. 41-2 at 8. The Bremerton Police Department informed him that

5  he could no longer serve as a reserve officer because he had entered a pre-trial diversion

6  agreement. Dkt. 37-1 at 21.

7       On April 8, 2013, Hamilton's Guild pursued a "Step 2" grievance on the

8  termination proceeding. Dkt. 38 at 6. The Corrections Chief denied the grievance. *Id.* On

9  May 2, 2013, the Guild filed a "Step 3" grievance that the Undersheriff denied. *Id.*; Dkt.

10 38-1 at 61–68.

11      After denial of the "Step 3" grievance, citing the weakness of the case, the Guild

12 declined to pursue arbitration over Hamilton's termination. Dkt. 37-1 at 6; Dkt. 38 at 7.

13 When Hamilton asked that the Guild pursue his case, the Guild informed him that he

14 would need to retain private counsel for any further matters. Dkt. 37-1 at 6.

15 **E.   Subsequent Efforts to Secure Employment**

16      Since his termination, Hamilton has been unable to find meaningful employment

17 in law enforcement, corrections, or security fields. Dkt. 41-2 at 8. He has submitted at

18 least thirty-four applications for different positions. *Id.* at 8–9. As a result, he has been

19 forced to rely on self-employment, opening a bail bonds and private investigation

20 company. *Id.* at 9.

21

22

1

## III. DISCUSSION

2      Before the Court are (1) the County's motion to strike, Dkt. 43; (2) the County's

3 motion for summary judgment, Dkt. 36; and (3) the County's motion for sanctions

4 pursuant to Federal Rule of Civil Procedure 11, Dkt. 47.

5 **A.    Motion to Strike**

6      The County moves to strike various statements contained in the declarations of

7 Brett Hamilton and Terry Cousins on the bases that they are inadmissible as hearsay. Dkt.

8 43 at 1–2. First, the Court notes that numerous statements to which the County objects

9 are not hearsay, *see* Dkt. 44 at 15–19, as they are not "offer[ed] for the truth of the matter

10 asserted in the statement." Fed. R. Evid. 801(c). Moreover, "[a]t the summary judgment

11 stage, we do not focus on the admissibility of the evidence's form. We instead focus on

12 the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir.

13 2003). Lacking argument from the County as to the ultimate admissibility or non-

14 admissibility of the content of the statements to which the County generally objects as

15 "hearsay," the Court denies the motion to strike.

16      In any case, to the extent the Court cites factual assertions that raise evidentiary

17 concerns, the Court will discuss them as they are cited.

18 **B.    Summary Judgment**

19      The County has moved for summary judgment on Hamilton's remaining claims

20 for (1) an alleged violation of substantive due process pursuant to § 1983 and (2) an

21 alleged breach of contract. Dkt. 36. Summary judgment is proper "if the pleadings, the

22 discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether an issue of fact exists, the Court views all evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *see also Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact arises where sufficient evidence exists for a reasonable fact-finder to find for the nonmoving party. *See Anderson*, 477 U.S. at 248. The moving party bears the initial burden of showing that no evidence exists to support an essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Once the movant satisfies this burden, the nonmoving party must proffer evidence to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 250. The nonmovant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. If the nonmoving party fails to present a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Id.* at 323–24.

### 1.    Substantive Due Process

"[T]he due process clause includes a substantive component which guards against arbitrary and capricious government action, even when the decision to take that action is made through procedures that are in themselves constitutionally adequate." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1407 (9th Cir. 1989). Substantive

1   due process only guards against governmental employment actions where "the

2   interference with property rights was irrational or arbitrary." *Bateson v. Geisse*, 857 F.2d

3   1300, 1303 (9th Cir. 1988). "To establish a violation of substantive due process . . . a

4   plaintiff is ordinarily required to prove that a challenged government action was clearly

5   arbitrary and unreasonable, having no substantial relation to the public health, safety,

6   morals, or general welfare." *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996)

7   (citations, internal quotations and brackets omitted), *overruled in part on other grounds*

8   *as recognized by Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086 (9th Cir. 2007). When

9   it is "at least fairly debatable" that an action is related to a legitimate government interest,

10  there can be no substantive due process violation. *Kawaoka v. City of Arroyo Grande*, 17

11  F.3d 1227, 1234 (9th Cir. 1994).

12          While a substantive due process claim is cognizable for the violation of an

13  employee's occupational liberty, the claim is limited:

14          [The Ninth Circuit] limit[s] the claim to extreme cases, such as a
        "government blacklist, which when circulated or otherwise publicized to
15      prospective employers effectively excludes the blacklisted individual from
        his occupation, much as if the government had yanked the license of an
16      individual in an occupation that requires licensure."

17  *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 997–98 (9th Cir. 2007), *aff'd*

18  *sub nom. Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008) (quoting *Olivieri v.*

19  *Rodriguez*, 122 F.3d 406, 408 (7th Cir. 1997)). To qualify as an extreme case, "a plaintiff

20  must show that the 'character and circumstances of a public employer's stigmatizing

21  conduct or statements are such as to have destroyed an employee's freedom to take

22

1   advantage of other employment opportunities.'" *Id.* at 998 (quoting *Bordelon v. Chi. Sch.*

2   *Reform Bd. of Trs.*, 233 F.3d 524, 531 (7th Cir. 2000)).

3         Hamilton has failed to provide evidence whereby a jury could rationally conclude

4   the County committed irrational, arbitrary, and stigmatizing conduct that violates

5   substantive due process. Hamilton was placed on administrative duty, with pay, while his

6   conduct towards the wife of an inmate was investigated. After criminal charges were filed

7   and Hamilton entered a pre-trial diversion agreement, the County decided to terminate

8   him. The decision to terminate a Corrections Officer whose harassing conduct towards an

9   inmate's wife results in criminal charges and a pre-trial diversion agreement does not

10  lack a "substantial relation to the public health, safety, morals, or general welfare." *Patel*,

11  103 F.3d at 874. Even if the County fell short of its contractual obligations under

12  "Appendix D" as Hamilton contends, *see* Dkt. 41 at 14–15, such a shortcoming on its

13  own cannot constitute a constitutional deprivation.

14        Nor has Hamilton produced evidence that his termination by the County has

15  deprived him of the ability to find work. The Bremerton Police Department told Hamilton

16  that his pre-trial diversion agreement was the cause for his release from the reserve

17  program. Dkt. 37-1 at 21. Accordingly, the record indicates that any "blacklisting" of

18  Hamilton was a result of the criminal charges resulting from his own stigmatizing and

19  inappropriate conduct, not his termination. Hamilton has failed to produce evidence to the

20  contrary. Therefore, the Court grants summary judgment in favor of the County on

21  Hamilton's § 1983 claim alleging a violation of substantive due process.

22

1    **2.    Breach of Contract**

2          The County contends that Hamilton's claim for breach of contract is barred by

3    Hamilton's failure to exhaust his administrative remedies. "Where an agreement provides

4    for a method of resolving disputes between the parties, that method must be pursued

5    before either party can resort to the courts for relief." *Hansen v. City of Seattle*, 45 Wn.

6    App. 214, 218 (1986) (citing *Tombs v. Nw. Airlines, Inc.*, 83 Wn.2d 157 (1973)).

7    Accordingly, "where a collective bargaining agreement establishes grievance and

8    arbitration procedures for the redress of employee grievances, an employee must exhaust

9    those procedures before resorting to judicial remedies." *Lew v. Seattle Sch. Dist. No. 1*,

10   47 Wn. App. 575, 577 (1987) (citing *Moran v. Stowell*, 45 Wn. App. 70 (1986)).

11         Hamilton argues that his claim is not barred because his Guild failed in its duty of

12   fair representation. Washington courts excuse the exhaustion requirement when

13   employees can show "that the union acted arbitrarily, discriminatorily, or in bad faith in

14   failing to exhaust the contractual procedures for settling disputes." *Lew*, 47 Wn. App. at

15   578. To support his argument, Hamilton cites the Guild attorney's failure to argue at the

16   *Loudermill* hearings that the County violated Hamilton's rights under "Appendix D"

17   when a detective interviewed Hamilton without prior notice. Dkt. 41 at 21; Dkt. 41-2 at

18   6–7. "Appendix D" provides:

19              It is essential that public confidence be maintained in the ability of
         the employer to investigate and properly adjudicate complaints against its
20       employees. . . . *In criminal matters*, an employee shall be afforded those
         constitutional rights available to any citizen. *In administrative matters* in
21       which an employee will be interviewed concerning an act, which, if proven,
         could reasonably result in disciplinary action involving a loss of pay against

22

him or her, she/he will be afforded the safeguards set forth in this Appendix.

Dkt. 41-3 at 122.

A detective interviewed Hamilton as part of a criminal investigation that resulted in criminal charges. Hamilton has made no showing that he was denied "those constitutional rights available to any citizen" during that investigation. Reviewing the language in "Appendix D," it was neither arbitrary, discriminatory, nor in bad faith for the Guild's attorney to focus on Hamilton's exemplary record at the *Loudermill* hearings, rather than the County's failure to notify Hamilton of a criminal investigation. *See* Dkt. 41 at 21; Dkt. 41-2 at 7. Furthermore, Hamilton's argument misses the mark. The question is not whether his *Loudermill* hearings were poorly handled by Guild counsel, but rather, whether the Guild's decision not to pursue arbitration was a "wrongful refusal to process the grievance." *Lew*, 47 Wn. App. at 578.

The Guild declined to further process the grievance because, after consulting with legal counsel, it determined that the case was weak. Dkt. 37-1 at 6; Dkt. 38 at 7. The only evidence Hamilton offers in opposition to the Guild's conclusion is his legal argument based on "Appendix D," discussed above. The Court finds the Guild's reasoning compelling, as the criminal investigation into Hamilton's conduct does not appear to have required prior notice under "Appendix D." At the least, Hamilton's argument was highly questionable. Under such circumstances, Hamilton's argument falls short "of evidence showing bad faith, discrimination, or arbitrary conduct." *Lew*, 47 Wn. App. at 578.

1  Accordingly, the Guild's "decision to forgo exhaustion of grievance procedures

2  binds [Hamilton] and forecloses judicial action on the contract." *Id.* The Court grants

3  summary judgment in favor of the County on Hamilton's claim for breach of contract.

4  **C.    Motion for Sanctions**

5  The County has also moved for sanctions pursuant to Federal Rule of Civil

6  Procedure 11, arguing that Hamilton's complaint was frivolous. Dkt. 47. Under Rule 11,

7  "sanctions must be imposed on the signer of a paper if either a) the paper is filed for an

8  improper purpose, or b) the paper is 'frivolous.'" *Townsend v. Holman Consulting Corp.*,

9  929 F.2d 1358, 1362 (9th Cir. 1990). The term "frivolous is a shorthand that . . . denote[s]

10 a filing that is both baseless and made without a reasonable and competent inquiry." *Id.*

11 To support the motion, the County points to numerous facts that resulted in the

12 earlier dismissal of Hamilton's procedural due process claim. Dkt. 41 at 6. The County

13 also summarily cites Hamilton's lack of "any evidence of arbitrary conduct necessary to

14 support [his] claims" and raises various arguments on the merits of Hamilton's breach of

15 contract claim. *Id.* In response, Hamilton cites the County's inability to have the action

16 dismissed in its entirety on three separate occasions. Dkt. 50 at 4.

17 The Court will not require Hamilton to compensate the County for dedicating

18 resources to defend claims that it failed to defeat at earlier stages of litigation. The Court

19 also declines to award Hamilton fees and expenses under Fed. R. Civ. P. 11(c)(2) for

20 prevailing on this motion.

21

22

ORDER - 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**IV. ORDER**

Therefore, it is hereby **ORDERED** that the County's motion for summary judgment (Dkt. 36) is **GRANTED**; the County's motion to strike (Dkt. 43) is **DENIED**; and the County's motion for sanctions (Dkt. 47) is **DENIED**. The Clerk shall close this case.

Dated this 14th day of September, 2016.

BENJAMIN H. SETTLE
United States District Judge